IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JANINE R. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 6:11-3216-DGK-SSA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER AFFIRMING COMMISSIONER'S DECISION**

Plaintiff Janine Adams seeks judicial review of the Commissioner of Social Security's denial of her application for disabled widow's insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.* Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

Adams contends she is disabled due to fibromyalgia and chronic fatigue. The Administrative Law Judge ("ALJ") denied her application, finding that while she suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform a range of light work with extensive restrictions. After carefully reviewing the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

A summary of the medical and procedural record is presented in the parties' briefs and is repeated here only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law and whether the findings of fact are supported by substantial evidence on the record as a whole. In order to establish entitlement to disabled widow's benefits, a claimant must be fifty years-old, the widow of the wage earner, and unmarried. A claimant must also show that her disability began no later than seven years after the wage earner died, or seven years after the claimant was last entitled to survivor's benefits, whichever is later. 20 C.F.R. § 404.335. The parties agree that Plaintiff was fifty years-old on the date she allegedly became disabled, January 1, 2004; that she was the widow of the wage earner; and that she did not remarry. The parties also agree that Plaintiff was last entitled to survivor's benefits on December 31, 1999. Therefore, the regulations require that Plaintiff establish that she was disabled prior to December 31, 2006. Accordingly, the relevant time

2

Case 6:11-cv-03216-DGK   Document 11   Filed 01/02/13   Page 2 of 9

period in this case is from January 1, 2004, Plaintiff's alleged onset date, to December 31, 2006, the end of the seven-year period.

The dispute here is whether Adams was disabled during this time. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1] Adams argues the ALJ erred at step four of the process by: (1) failing to give controlling weight to the opinion of her primary care treating physician; (2) incorrectly determining her RFC; and (3) failing to find her credible. These arguments are unavailing.

**I.    The ALJ did not err in discounting the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred by not adopting either of two different medical source statements submitted by her treating physician, Dr. Barbara Bumberry, M.D. Both of the statements, the first completed in 2009 and the second completed in 2010, indicate that Plaintiff was severely disabled and unable to lift more than a few pounds or stand for more than a few minutes. R. at 417-18, 461-63. Plaintiff contends that Dr. Bumberry was most familiar with her medical condition and the ALJ wrongly substituted his opinion for Dr. Bumberry's medical opinion.

Although a treating physician's opinion concerning an applicant's functional limitations is generally entitled to substantial weight, "[a] treating physician's opinion does not

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

3

automatically control or obviate the need to evaluate the record as whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotation omitted). The regulations require the ALJ to consider six factors in weighing a doctor or other medical professional's opinion. 20 C.F.R § 404.1527(c). The first three factors analyze the doctor's treatment relationship with the claimant, including the length of treatment and the type of relationship between the claimant and the doctor, in order to determine whether the doctor is familiar enough with her patient to justify assigning the opinion greater weight. *Id.* The other three factors consider whether the doctor supported her opinion with specific facts or evidence, whether the doctor's opinion is consistent with other evidence and opinions, and whether there are "other factors" including the doctor's familiarity with the claimant's case. *Id.* No single factor is weighed more heavily than another. *Id.*

The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). But the ALJ does not cede disability assessments to a claimant's treating physician. An ALJ cannot give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques or is inconsistent with the other substantial evidence of record. *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010); 20 C.F.R. § 404.1527(c)(2). Once the ALJ has decided how much weight to give to a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *See Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

Substantial evidence supports the ALJ's decision to discount Dr. Bumberry's retrospective medical source statements that were completed in 2009 and 2010 and which purport to describe Plaintiff's limitations in the 2004 to 2006 time period. While retrospective

opinions are important evidence, they must be consistent with the record. *See Trossauer v. Chater*, 121 F.3d 341, 344-45 (8th Cir. 1997) (holding doctor's recollection of patient's treatment from 20 years before was supported by the record and awarding benefits). Here, the medical source statements are not consistent with the record. Neither Dr. Bumberry's or any other doctor's treatment notes from 2004 to 2006 suggest that Plaintiff's impairments were as severe as alleged in the retrospective medical source statements. In fact, Dr. Bumberry's treatment notes from 2004-2006 discuss Plaintiff's fibromyalgia in depth only once; by and large, her treatment notes for this period deal with routine medical problems like colds. If Plaintiff's fibromyalgia were as disabling as she suggests, there would have been more discussion of it in her treating physician's notes. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Furthermore, the medical source statements, which allegedly cover the same time period, are also inconsistent with each other. The form completed in 2009 indicates that Plaintiff could walk and stand a few hours through the course of the day, but the form completed in 2010 opines that she could stand or sit for only a few total minutes over the course of an entire workday. R. at 417, 461. The 2010 form also contains restrictions on Plaintiff's ability to lift, such as needing to rest frequently. R. 461-63. When a doctor issues inconsistent opinions, the opinions are less credible. *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006).

The ALJ also did not err in discounting Dr. Bumberry's opinion because the ALJ suspected Dr. Bumberry was trying to facilitate Plaintiff's receipt of disability. As the ALJ noted, Dr. Bumberry wrote on the 2009 form that "these questions were reviewed [with] the [patient]." R. at 418. By allowing Adams to participate in completing the form, the doctor arguably accepted Plaintiff's self-reported claims at face value instead of critically evaluating them. While Plaintiff contends the suggestion that Dr. Bumberry may have been trying to assist

her receive benefits is outrageous, it "is well known [that] many physicians (including those most likely to attract patients who are thinking of seeking disability benefits) will often bend over backwards to assist a patient in obtaining benefits." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (Posner, J.) (internal citation omitted). Consequently, the ALJ did not err in rejecting Dr. Bumberry's medical source statements.

Plaintiff also contends the ALJ assigned too much weight to the opinion of a non-doctor adjudicatory official who participated in the administrative decision process. The adjudicatory official is part of a program the Commissioner is testing called the "single decision maker," or SDM. The SDM makes "initial disability determinations in many cases without [a] medical or psychological consultant." Program Operations Manual System (POMS), DI 12015.100 "Disability Redesign Prototype Model," (available at http://secure.ssa.gov/POMS.NSF/lnx/0412015100). Because the SDM is an adjudicatory official, the ALJ could not rely on his opinion as if it were a medical opinion. *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007).

Plaintiff acknowledges that the ALJ rightly concluded that the SDM opinion was "entitled to no evidentiary weight." She still complains the ALJ misclassified the opinion as an "other source" medical opinion. While the ALJ misclassified the opinion, this mistake is harmless because the ALJ correctly stated that the opinion was due no weight, and the record is clear that the ALJ in fact gave it no weight. R. at 25. Thus, the mistake is simply a deficiency in opinion writing which did not affect the outcome. *See Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

**II.    The ALJ properly determined Plaintiff's physical RFC.**

Plaintiff also argues the ALJ's hypothetical question was improper because it did not embrace Dr. Bumberry's suggested limitations. Given the existing record, this argument is unavailing.

Although a hypothetical question must set forth with reasonable precision the claimant's impairments, it need only include those impairments and limitations that are substantially supported by the record as a whole. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). Discredited subjective complaints are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).

The hypothetical question posed to the vocational expert in this case was properly formulated in that it included only Plaintiff's credible limitations. Because the hypothetical question included those impairments the ALJ found credible and excluded those he discredited for legally sufficient reasons, the vocational expert's testimony that Plaintiff could perform work existing in significant numbers was substantial evidence supporting the ALJ's determination. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011); *Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010).

**III.    The ALJ did not err in analyzing Plaintiff's credibility.**

Finally, Plaintiff argues the ALJ incorrectly assessed her credibility. She contends her main impairment, fibromyalgia, is completely subjective, and that it was unfair for the ALJ to reject some of her claimed limitations. She asserts her fibromyalgia diagnosis, coupled with the medical source statements from her treating physician, prove she was disabled.

As a threshold matter, the Court notes that although fibromyalgia is a serious illness with no objective diagnostic test. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (Posner, J.). Because there is no objective way to measure the severity of the disease, Plaintiff's credibility is particularly important. "[Q]uestions of fact, including the credibility of a plaintiff's subjective

testimony, are primarily for the [ALJ] to decide, not the court." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).

The objective medical evidence here supports the ALJ's determination that Plaintiff's ability to work was not as limited as alleged. If Plaintiff were so limited that she could not sit or stand for more than a few minutes, as she claimed at her hearing (R. at 51), one would expect her to be receiving more care for her fibromyalgia. Yet Plaintiff's medical records for the relevant period are unremarkable. Plaintiff initially complained about fibromyalgia symptoms to her treating physician, Dr. Bumberry, in January 2004, when she reported that pushing a shopping cart or vacuum cleaner was causing pain. R. at 278. However, Dr. Bumberry's treatment notes do not contain any detailed assessment of her fibromyalgia, nor is there any indication that Plaintiff's pain was so severe that it was disabling. *Id.* Most of her medical examinations for this period were for other transient problems. Indeed, Plaintiff did not seek care from Dr. Bumberry during 2006 at all. During some of her appointments with Dr. Bumberry her fibromyalgia was mentioned, but it was rarely discussed at length as one would expect for a disabling illness. R. at 274-78.

Although she received frequent chiropractic treatment, which corroborates that she was experiencing pain, if her pain was as disabling as she claims, one would expect her to seek more treatment. *Edwards*, 314 F.3d at 967. Moreover, the chiropractor's treatment notes do not provide any insight into her level of pain or her fibromyalgia's progression; the notes are simply a list of treatment dates. R. at 299-300, 303, 305-06. While they document that she sought care, they do not show that the disabling level of restriction she claims.

Additionally, Plaintiff never sought any fibromyalgia-related care from another doctor until September 2006, a few weeks before the end of the prescribed disability period. R. at 263. She saw this other doctor, Dr. Milton Hammerly, M.D., only once during the relevant period for fibromyalgia-related complaints. After the disability period ended, she reported to him that she was forty percent better and had increased energy and refreshing sleep. R. at 252. She did not indicate she was having any difficulty walking or sitting.

In fact, outside of Dr. Bumberry's medical source statements completed in 2009 and 2010, Adams has never been prescribed any limits on her activities. On the contrary, during the relevant period Dr. Bumberry instructed her to exercise, R. at 276, and after the relevant period ended, Adams reported she had been exercising. R. at 274. These facts weigh against a finding her disabled. *Choate*, 457 F.3d at 870.

Given the contrast between Plaintiff's claims and the entire record, the Court finds the ALJ's credibility assessment is supported by substantial evidence on the record.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 2, 2013                   /s/ Greg Kays
                                         GREG KAYS, JUDGE
                                         UNITED STATES DISTRICT COURT